EMPIRE OIL & REFINING CO. et al. v. FIELDS.

No. 25995.   June 15, 1937.

Rehearing Denied Nov. 16, 1937.

232

Hayes McCoy, R. E. Cullison, S. N. Hawkes, and A. C. Hough, for plaintiffs in error.

W. P. Morrison, John Morrison, 'and Robert Burns, for defendant in error.

BAYLESS, V. C. J. Empire Oil & Refining Company, a corporation, and R C. Ketzler, defendants below, appeal to this court from a judgment against them and in favor of Della Fields, plaintiff below, in the district court of Oklahoma county, Okla.

The plaintiff's cause of action was for injuries sustained as the result of being shot by Ketzler, a special deputy sheriff employed by Empire Company to guard its property. Enough of the facts to understand the contentions of the parties may be stated in 'a summary manner, as follows: Plaintiff's husband drove his car, in which were plaintiff and her 13 months old child, to a point outside the city of Seminole, Okla., and parked near the property of Empire Company. Plaintiff's husband had some conversation with one Plummer, who then went to a city park nearby and got a five-gallon can of gasoline from a cache and started to take it to plaintiff's husband's car. The inference that this gasoline was stolen is inescapable. Plummer said he saw a man hide it there earlier in the day. Ketzler, and another special officer, were secreted nearby and when Plummer had taken the gasoline they apprehended him. When plaintiff's husband heard the commotion thereof, he started up his car and drove away. Ketzler fired his gun in an effort to cause the driver of the car to halt. There is no dispute as to these facts. Ketzler, and other witnesses, say he fired a sawed-off shotgun and Ketzler says he fired into the air. Plaintiff's witnesses all say he fired a Winchester rifle and directly at the car. Plaintiff says as her husband drove away she was looking back towards the scene they had just left, and she saw the flash of Ketzler's gunfire, and that she was struck in the back of the head. There is no dispute that she had a superficial skin wound to the right of the occipital bone. Plaintiff contends she was struck a grazing blow by a slug from a rifle. Defendants deny she was wounded by Ketzler's gunshot, but contend that at most it could have been only a No. 6 bird shot.

There were no marks on the car. While the wound was small, and in a sense immaterial, the plaintiff was two months advanced in pregnancy at the time; and, as a result of the shock, suffered a miscarriage. Her physician testified in detail to her physical condition at the time of the examination, some two months after the miscarriage, as well as to her condition at the time of the trial. His testimony positively attributed the miscarriage to the shock of being shot. But he was not asked for the cause of her physical condition, which he described as serious and permanent. Plaintiff pleaded that she suffered the miscarriage as a result of the shot, and suffered a serious and permanent derangement of her female organs and functions as a result of the miscarriage and shock. There is no medical testimony to attribute this derangement of organs and functions to the miscarriage or shock.

Therefore, the defendants' fifth assignment of error, in so far as it relates to the erroneous instruction on this issue, must be sustained. It is well-settled law in this jurisdiction that where a person's physical condition is such that medical testimony is necessary to describe it and to 'ascribe the cause therefor, such medical testimony must be given to a jury before a trial court is justified in submitting the issue to the jury. We said in Inter-Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. (2d) 399:

"Where the injuries are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one for science, and must necessarily be determined by the testimony of skilled professional persons. * * *"

See Willett v. Johnson, 13 Okla. 563, 76 P. 174; St. L., etc., Ry. Co. v. Criner, 41 Okla. 256, 137 P. 705; St. L., etc., Ry. Co. v. State Ind. Comm., 113 Okla. 179, 241 P. 170, 'and numerous other cases. There was competent evidence to submit to the jury the issue of whether she was shot and likewise whether the miscarriage resulted from the shock of the shot; but there was no evidence that any other injuries resulted from the shot, and the trial court was not justified in submitting the issue to the jury. In our opinion, the submission of this issue was prejudicial. The wound from the shot was inconsequential. The miscarriage is, of course, a more serious matter. But the emphasis laid upon the plaintiff's condition with relation to her female organs and functions undoubtedly accounts for the large verdict in this case. We are clearly of the opinion that a verdict of $25,000 for the injuries suffered as a result of the mis-

carriage, which is supported by competent medical testimony attributing the same to the shock, is excessive, whereas such a verdict for injuries resulting from the miscarriage and the serious and permanent derangement of the plaintiff's female organs and functions, if the latter had been supported by competent medical testimony, attributing the same to the shock and miscarriage, might not have been excessive. We are not determining the question of propriety of amount of verdict under this last statement, but are simply making the comparison as proof of the prejudice which resulted to the defendant as the result of permitting the jury to consider the injuries not supported by competent medical testimony.

One question relates to the venue of the action. Empire Oil & Refining Company is a foreign corporation, and has its offices and principal place of business in Oklahoma, at Bartlesville, Washington county. Its service agent, appointed pursuant to the laws of Oklahoma, resides at Oklahoma City. Ketzler is a citizen and resident of Seminole county, Okla. Section 125, O. S. 1931, reads:

"Any foreign corporation, doing business in the State of Oklahoma and any person now or hereafter having any cause of action against such corporation, arising on contract, tort, or otherwise, may file suit in any county in the State of Oklahoma, where the plaintiff resides or where said corporation has its principal place of business, or has property, or in any county where said corporation has an agent appointed upon whom service of summons or other process may be had."

We think there is no discrimination between foreign and domestic corporations in the constitutional sense. The venue of transitory actions against domestic corporations is limited (1) to the county where it is situated, or has its principal office or place of business, (2) or where its principal officers reside or may be served, or (3) where the cause of action or some part thereof arose. Section 112, O. S. 1931. The venue of transitory actions against foreign corporations is (1) where plaintiff resides, (2) where corporation has its principal office or place of business, (3) or has property, or (4) where it has an agent appointed for service. Section 125, supra.

In this case it is alleged that since defendant, a foreign corporation, must appoint a resident of the Capital City as its agent for service of process, it results that all transitory actions have a venue there. We do not understand the federal cases (Power Mfg. Co. v. Saunders, 274 U. S. 490, 71 L. Ed. 1165, and Bain Peanut Co. v. Pinson, 282 U. S. 499, 75 L. Ed. 482) to hold that there may not be a difference in the venue prescribed, but only that there may not be a discrimination. The respective venues prescribed must bear a reasonable relation to the business. It must find its basis in the establishment which a foreign corporation has set up in this state. Since a domestic corporation must be domiciled in this state, and have an abode, it naturally results that every transitory action may be brought in that county. Since a foreign corporation may never acquire an abode here, the state has chosen to require all of them to establish one in Oklahoma county. We can see no prejudice to them in the type or character of service, and that venue may also result therefrom is not discriminatory in our opinion. See Phillips Pet. Co. v. Smith, 177 Okla. 539, 61 P. (2d) 184.

The next question relates to the legal responsibility of Empire for the acts of Ketzler. Ketzler carried a special deputy sheriff's commission at the time. It was issued to him by the sheriff of Seminole county, at the request of Empire Company and upon its promise of assurance to the sheriff. Ketzler's duties consisted of guarding the property of Empire, and of co-operating with other officers in preventing theft of the properties of the various oil companies. He was paid by Empire Company.

Both parties cite the text of 18 R. C. L. 786, sec. 246, as stating the rule relating to issue. It reads:

"The weight of modern opinion, however, is that where private persons, with the consent of the state, employ its police officers to represent them, and to do special work for them in protecting and preserving their property and maintaining order on their premises, and such officers are engaged in the performance of their duties to their employers, and are acting within the scope of their powers and duties, they become and are servants and employees of such private persons, and that for negligent and wanton acts committed by them in the line of their duty, and when engaged in the performance of such duties, to the injury of others, their masters or employers are liable."

In addition to this, the cases seem to hold that whether the private officer was engaged in the performance of duties for his employer or those of a public officer is a

question of fact, to be determined by the jury from the evidence. Hudson v. St. L., etc., Ry. Co. (Tex. Com. App.) 293 S. W. 811; Rand v. Butte Elec. Ry. Co., 40 Mont. 398, 107 P. 87; Newberry v. Smith, 227 Ala. 234, 149 So. 669; New York, etc., Ry. Co. v. Fieback, 87 Ohio, 254, 100 N. E. 889. Even the cases which do not lay down as broad a rule as the text above only surround the officer's acts with a presumption that he was in the performance of public duties as differentiated from those of his employer. New York, etc., Ry. Co. v. Fieback, supra, and McKain v. B. & O. Ry. Co., 65 W. Va. 233, 64 S. E. 18. Therefore, if the facts of the case bring Ketzler and the Company within the rule above announced, the Company is responsible for Ketzler's acts which are tortious.

Reversed.

OSBORN, C. J., and BUSBY, WELCH, CORN, GIBSON, and HURST, JJ., and REX H. HOLDEN, Special Justice, concur. RILEY, J., absent. PHELPS, J., disqualified.